FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## CIVIL DIVISION

2007 DEC 14  PM 12: 56

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

NORMAN WADE DOBBINS,                    )
                                        )
        Plaintiff,                      )
                                        )
vs.                                     )    CASE NO. 3 - 0 7 - - 1 2 5 4
                                        )
AMERIQUEST MORTGAGE                     )
COMPANY, AMC MORTGAGE                   )
SERVICES, INC., CITI                    )
RESIDENTIAL LENDING, INC. and           )
WASHINGTON MUTUAL MORTAGE               )
SECURITIES CORP. doing business as      )
WASHINGTON MUTUAL BANK,                 )
                                        )
        Defendants.                     )

### COMPLAINT

COMES NOW NORMAN WADE DOBBINS, the above named Plaintiff and for his

cause of action against Defendants AMERIQUEST MORTGAGE COMPANY, AMC

MORTGAGE SERVICES, INC., CITI RESIDENTIAL LENDING, INC., and WASHINGTON

MUTUAL MORTGAGE SECURITIES CORP doing business as WASHINGTON MUTUAL

BANK, hereby states as follows:

### INTRODUCTION

1. This is an action filed under the Truth in Lending Act, 15 U.S.C. § 1601 (hereinafter

called "Act") to enforce the Plaintiff's right to rescind a consumer credit transaction, to void the

Defendant Creditor's security interest in the Plaintiff's home, and to recover statutory and actual

damages, plus reasonable attorney's fees and costs by reason of violations of the Act and

Regulation Z, 12 C.F.R. § 226 (hereinafter called "Regulation Z"). This is also an action against

AMERIQUEST MORTGAGE COMPANY for fraud, deceit and nondisclosure and breach of

contract in the course of the transaction which gave rise to this action and against the other

defendants to the extent that they stand in the shoes of AMERIQUEST as assignees.

## JURISDICTION AND PARTIES

2. Jurisdiction of this Court arises under 15 U.S.C. §1640 (e) and 28 U.S.C. §§ 1331, 1337. The Court has authority to issue a declaratory judgment under 28 U.S.C. § 2201.

3. Plaintiff NORMAN WADE DOBBINS is a natural person currently residing in Williamson County, Tennessee and is a "consumer" within the meaning of the Act.

4. Defendant AMERIQUEST MORTGAGE COMPANY (hereafter called "AMERIQUEST") is a Delaware for profit corporation with its principal place of business located in Orange, California.

5. Defendant AMC MORTGAGE SERVICES, INC. (hereafter called "AMC") is a Delaware for profit corporation with its principal place of business located in Orange, California.

6. Defendant CITI RESIDENTIAL LENDING, INC. (hereafter called "CITI") is a Delaware for profit corporation with its principal place of business located in New York, New York.

7. Defendant WASHINGTON MUTUAL MORTGAGE SECURITIES CORP. doing business as WASHINGTON MUTUAL BANK (hereafter called WASHINGTON MUTUAL) is a Delaware for profit corporation with its principal place of business located in Seattle, Washington.

8. At all times relevant hereto AMERIQUEST, in the ordinary course of its business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

## FACTUAL ALLEGATIONS

9. On or about December 16, 2004, the Plaintiff entered into a consumer credit transaction (hereafter "TRANSACTION 1") with AMERIQUEST in which the extended consumer credit was subject to a finance charge and which was initially payable to AMERIQUEST.

10. Said TRANSACTION 1 was a refinance of an existing mortgage upon Plaintiff's personal residence.

11. A true and accurate copy of the Deed of Trust and adjustable rate mortgage note rider resulting from TRANSACTION 1 is attached hereto, marked as PLAINTIFF'S EXHIBIT A, and by this reference is incorporated herein.

12. As a part TRANSACTION 1, AMERIQUEST took a security interest in Plaintiff's home, commonly known as 911 Rebel Circle, Franklin, Williamson County, Tennessee which was and still is used by Plaintiff as his principal dwelling.

13. The security interest was not created to finance the acquisition or initial construction of the Plaintiff's dwelling.

14. All of the documents on which authorized agents on behalf of AMERIQUEST solicited the Plaintiff's signature regarding TRANSACTION 1 were brought to Plaintiff's dwelling by a closing agent and signed by Plaintiff at his dwelling.

15. TRANSACTION 1 was less favorable to the Plaintiff than the Plaintiff's existing Bank of America mortgage note. Specifically, said Bank of America mortgage note did not contain a prepayment penalty.

16. On December 16, 2004, the Plaintiff was recuperating from orthopedic surgery that he underwent on December 1, 2004 for which he used medication that had been prescribed for him for post-operative pain.

17. Immediately prior to December 16, 2004, AMERIQUEST engaged in unfair lending practices by repeatedly sending agents on its behalf to the Plaintiff's dwelling to prey upon the Plaintiff to enter into TRANSACTION 1 at times when the Plaintiff was vulnerable due to his weakened physical condition, and his medicated condition.

18. Specifically, the unfair lending practices and preying consisted of knowingly attempting to persuade Plaintiff that a proposed refinance would be to his advantage, when AMERIQUEST well knew that was not the case, and while AMERIQUEST well knew that this

would be just one more of the many thousands of victims of AMERIQUEST'S deceitful lending practice, well documented in complaints which have been investigated by several governmental authorities and outlined at the information website for the Ameriquest Multistate Settlement at www.ameriquestmultistatesettlement.com.

19. On December 16, 2004, the Plaintiff properly exercised his right to rescind TRANSACTION 1 by notifying AMERIQUEST via his written communication to Creditor using AMERIQUEST'S form entitled "REQUEST TO CANCEL," a true and accurate copy of which is attached hereto, marked as PLAINTIFF'S EXHIBIT B, and by this reference is incorporated herein.

20. Said form provided by AMERIQUEST promised and contracted to give a one week cancellation period to the Plaintiff claiming **"we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you)**.

21. AMERIQUEST by its actions broke said promise and breached its contract with the Plaintiff.

22. The Plaintiff's "REQUEST TO CANCEL" was delivered to AMERIQUEST'S designated place of business on or before the time provided for by law.

23. AMERIQUEST thereafter contacted the Plaintiff and acknowledged that TRANSACTION 1 had been rescinded, and fraudulently induced him to allow its authorized representatives to return to the Plaintiff's dwelling by claiming to offer the Plaintiff a lower interest rate and no prepayment penalty on a new mortgage refinance loan (TRANSACTION 2).

24. Thereafter during the weekend, on either Saturday, December 18, 2004 or Sunday, December 19, 2004, the Plaintiff entered into TRANSACTION 2 with AMERIQUEST.

25. Upon information and belief, the material disclosures and notice of right to cancel required by the Act were not provided by AMERIQUEST to the Plaintiff in TRANSACTION 2.

26. AMERIQUEST charged inflated settlement charges to the Plaintiff in TRANSACTION 2.

27. AMERIQUEST contacted the Plaintiff on December 20, 2004 and misrepresented that, to get the lower interest rate that the Plaintiff wanted, it had to put a prepayment penalty onto the loan in TRANSACTION 2, but falsely told the Plaintiff that said penalty would only be for two years.

28. AMERIQUEST thereafter engaged in unfair lending practices by fraudulently disregarding TRANSACTION 2 and concealing from the Plaintiff that it failed to implement TRANSACTION 2.

29. Instead, AMERIQUEST thereafter engaged in unfair lending practices by secretly implementing the papers signed in TRANSACTION 1, without the consent of Plaintiff and without providing the disclosures and the notice of right to cancel required by the Act. This conduct is hereafter designated as TRANSACTION 3.

30. At the time that AMERIQUEST engaged in the fraudulent TRANSACTION 3, Plaintiff was entirely unaware, and believed that Transaction 2 was and would remain in effect.

31. AMERIQUEST transferred the loan resulting from this transaction to AMC for mortgage servicing.

32. AMC sent monthly mortgage statements to the Plaintiff in willful disregard of the Plaintiff's "REQUEST TO CANCEL".

33. AMC sent notice to the Plaintiff regarding the resetting of the adjustable rate mortgage note which resulted in an increase of the amount due on the monthly mortgage statements thereafter sent to the Plaintiff.

34. AMC unfairly pressured the Plaintiff into fearing that he would lose his dwelling to foreclosure if he failed to make the loan payments regarding the transaction.

35. On or about September 14, 2007, AMC sent a Notice of assignment, sale or transfer of servicing rights to the Plaintiff informing him that the mortgage loan servicing was to be transferred to CITI.

36. Plaintiff has reason to believe that the mortgage loan resulting from TRANSACTION 1 has been sold by AMERIQUEST to WASHINGTON MUTUAL BANK. Specifically, on or about October 23, 2007, CITI sent a letter to the Plaintiff informing him that the September 14, 2007 letter "named the original creditor of the debt instead of the current creditor". Said October 23, 2007 letter from CITI stated in part that "The creditor to whom the obligation is owned is WASHINGTON MUTUAL BANK".

37. As a result of AMERIQUEST'S violation of the Act and Regulation Z in reference to TRANSACTION 2 and the secret and fraudulent TRANSACTION 3, the Plaintiff suffered financial loss, emotional distress, mental anguish and other actual damages including but not limited to worry, loss of concentration and lack of sleep.

38. Alternatively, as a result of each Defendants' attempts to collect a mortgage note obtained in violation of the Act and Regulation Z in reference to TRANSACTION 1, a transaction that was properly cancelled by the Plaintiff, the Plaintiff suffered financial loss, emotional distress, mental anguish and other actual damages including but not limited to worry, loss of concentration and lack of sleep.

COUNT I (VIOLATION OF TRUTH IN LENDING ACT AND REGULATION Z)

39. All three consumer credit transactions were subject to the Plaintiff's right of rescission as described by 15 U.S.C. § 1635 and Regulation Z § 226.23 (12 C.F.R. 226.23).

40. On or about December 16, 2004, the Plaintiff properly rescinded TRANSACTION 1.

41. More than twenty calendar days have passed since AMERIQUEST received the Plaintiff's notice of cancellation

42. AMERIQUEST failed to honor the cancellation of TRANSACTION 1 and thereby violated the Act.

### COUNT II (AMERIQUEST'S BREACH OF CONTRACT)

43. AMERIQUEST'S willful dishonor of its written agreement to provide a one-week period in which the Plaintiff had the right to cancel the transaction constitutes an intentional breach of its contract which has damaged Plaintiff

### COUNT III (AMERIQUEST'S FRAUD AND DECEIT)

44. AMERIQUEST's secret implementation of TRANSACTION 3 without giving disclosures and a notice of right to cancel, violated the Act and constitutes fraud, deceit, and breach of contract.

### COUNT IV (ASSIGNEE LIABILITY UNDER THE ACT)

45. WASHINGTON MUTUAL has actual or imputed knowledge of all of the above conduct of AMERIQUEST and stands in the shoes of its assignor.

46. AMERIQUEST and WASHINGTON MUTUAL failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction, as required by 15 U.S.C. § 1635 (b) and Regulation Z § 226.23 (d) (2).

47. AMERIQUEST and WASHINGTON MUTUAL failed to return to the Plaintiff any money or property given by the Plaintiff to anyone, including AMERIQUEST, as required by 15 U.S. C. § 1635 (b) and Regulation Z § 226.23 (d) (2) and failed to restore Plaintiff to his former position

48. AMC and CITI have received money in the form of payments from the Plaintiff and have failed to return said money to the Plaintiff.

49. As a result, in the course of this consumer credit transaction and the servicing thereof, the Defendants violated 15 U.S.C. § 1635 (a) and Regulation Z § 226.23.

50. In the course of TRANSACTION 2 and TRANSACTION 3, AMERIQUEST violated 15 U.S.C. by failing to deliver to the Plaintiff two copies of a notice of the right to rescind which:

a. Identified the transaction

b  Clearly and conspicuously disclosed the security interest in the Plaintiff's principal dwelling.

c. Clearly and conspicuously disclosed the Plaintiff's right to rescind the transaction

d. Clearly and conspicuously disclosed how to exercise the right to rescind the transaction, with a form for that purpose, designating the address of AMERIQUEST'S place of business

e. Clearly and conspicuously disclosed the effects of rescission

f. Clearly and conspicuously disclosed the date the rescission period expired

51. In the course of TRANSACTION 2 and TRANSACTION 3, AMERIQUEST failed to deliver all "material disclosures required by the Act and Regulation Z.

52  The Plaintiff has a continuing right to rescind until the third business day after receiving both the required notice and all material disclosures required by the Act and Regulation Z, up to three years after consummation of the TRANSACTION 2 and TRANSACTION 3, and hereby exercises that right

### COUNT V (EQUITABLE TOLLING)

53. AMERIQUEST'S fraudulent concealment of its failure to respond to the Plaintiff's previous rescission of the transaction equitably tolls the statute of limitation for its violations of the Act, and for its tortuous conduct and for its breaches of contract.

WHEREFORE, the Plaintiff respectfully requests that judgment be entered against Defendants for:

A. Rescission of this transaction

B. Termination of any security interest in the Plaintiff's property created under the transaction.

C. Return of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with this transaction.

D. Statutory damages of $2000 against AMERIQUEST and WASHINGTON

MUTUAL for their failure to properly respond to the Plaintiff's rescission notice.

E. Forfeiture of return of loan proceeds

F. Actual financial damages, as well as damages for emotional distress and

mental anguish, to be determined at trial

G. A reasonable attorney's fee for Plaintiff and such other and further relief as

may be just and proper.

Respectfully Submitted

UAW-GM Legal Services Plans

By: _Shearon W Hales_

Shearon W Hales, BPR# 011184
Attorney for Plaintiff
100 Stephen P. Yokich Parkway, P.O. Box 1797
Spring Hill, Tennessee 37174-1797
(931) 487-9818 Toll Free (877) 501-4579

Please Return This Document To:
K.E.L. Title Insurance Agency, Inc.
1230 Douglas Avenue, Suite 302
Longwood, Florida 32779

Return To:

Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

Prepared By: Ameriquest Mortgage Company

T - 388 Kimberly Robinson
1 Lakeview Place 25 Century
Blvd., # 405, Nashville, TN
37214

The Maximum Principal Indebtedness for Tennessee recording tax purposes is $ 138,000.00

BK/PG: 3459/1-19

**05002686**

| TRUST DEED | |
| --- | --- |
| 01/18/2005 | 01:50 PM |
| BATCH | 37524 |
| MTG TAX | 156.40 |
| TRN TAX | 0.00 |
| REC FEE | 95.00 |
| DP FEE | 2.00 |
| REG FEE | 1.00 |
| TOTAL | 254.40 |

STATE of TENNESSEE, WILLIAMSON COUNTY

**SADIE WADE**
REGISTER OF DEEDS

———————[Space Above This Line For Recording Data]———————

T - 388

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **December 14, 2004**, together with all Riders to this document.

(B) "Borrower" is Norman Wade Dobbins, a single man

Borrower is the trustor under this Security Instrument.

(C) "Lender" is Ameriquest Mortgage Company

TENNESSEE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3043 1/01
12/16/2004 3:14:31                                                    0103708368 - 5524

AM6TN (0403)
Page 1 of 15                          Initials 
VMP Mortgage Solutions, Inc. (800)521-7291

0000010370836930301541601

Lender is a **Corporation**
organized and existing under the laws of **Delaware**
Lender's address is **1100 Town and Country Road, Suite 200  Orange, CA 92868**

Lender is the beneficiary under this Security Instrument
(D) "**Trustee**" is **Wesley D. Turner**

a resident of **Williamson County, Tennessee** _____, Tennessee
(E) "**Note**" means the promissory note signed by Borrower and dated **December 14, 2004**
The Note states that Borrower owes Lender **one hundred thirty-eight thousand and 00/100**
_____ Dollars
(U.S $ **138,000.00**            ) plus interest Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **January 1, 2035**                The maximum
principal indebtedness for Tennessee recording tax purposes is $ **138,000.00**
(F) "**Property**" means the property that is described below under the heading "Transfer of Rights in the
Property "
(G) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest
(H) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final
non-appealable judicial opinions.
(J) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association homeowners
association or similar organization.
(K) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or
credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "**Escrow Items**" means those items that are described in Section 3.
(M) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of or default on
the Loan



AM6TN (0402)                          Page 2 of 15                                    Form 3043 1/01

0103708368 - 5524

12/16/2004 3:14:31

(O) ' **Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA ' means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust,     with     power     of     sale     the     following     described     property     located     in     the

           **County**           of           **WILLIAMSON**        :

     [Type of Recording Jurisdiction]                  [Name of Recording Jurisdiction]

Legal Description Attached Hereto and Made a Part Hereof.

Derivation Clause

The instrument constituting the source of the Borrower's interest in the foregoing described property was a                                         recorded

in the Register's Office of **WILLIAMSON**              County, Tennessee.

Parcel ID Number: 063G-A-027             which currently has the address of

**911 rebel cir**                                            [Street]

**Franklin**                         [City] Tennessee 37064      [Zip Code]

("Property Address'):



AM6TN (0402)                 Page 3 of 16                Form 3043 1/01

12/16/2004 3:14:31

0103708368 - 5524

0000010370836030154160³

TO HAVE AND TO HOLD, the aforedescribed property, together with all the hereditaments and appurtenances thereunto belonging to, or in anywise appertaining, unto the Trustee, its successors in trust and assigns, in fee simple forever.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.



AM6TN (0402)

Page 4 of 15

Form 3043 1/01

0103708368 - 5524

12/16/2004  3:14:31

Any application of payments, insurance proceeds or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender



0103708368 - 5524

12/16/2004 3:14:31

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and



AM6TN (0402)    Page 6 of 15    Form 3043 1/01

0103708368 - 5524

12/16/2004  3:14:31

Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument (b) there



AM6TN (0402)                          Page 7 of 15                                   Form 3043  1/01

0103708368 · 5524

12/16/2004  3:14:31

0000010370836803015415807

is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).



AM6TN (0402)                    Page 8 of 15                    Form 3043  1/01

0103708368 - 5524

12/16/2004  3:14:31

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument  whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower  or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower  Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Initials: 

Form 3043  1/01

0103708368 - 5524

12/16/2004  3:14:31

00000103708368030154160S

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice



0103708368 - 5524

12/16/2004  3:14:31

00000103708368030154181O

address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18 "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period. Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument. and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of



0103708368 - 5524

12/16/2004 3:14:31

0000010370836500301541611

the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any



AM6TN (0402)     Page 12 of 15     Form 3043 1/01

0103708368 - 5524

12/16/2004 3:14:31

Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by Applicable Law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in Section 15. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Waivers.** Borrower waives all right of homestead, equity of redemption, statutory right of redemption and relinquishes all other rights and exemptions of every kind including but not limited to, a statutory right to an elective share in the Property.



Initials:

AM6TN (0402)                                      Page 13 of 15                                  Form 3043 1/01

0103708368 - 5524

12/16/2004 3:14:31

0000010370836865301541613

BY SIGNING BELOW Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

IN WITNESS WHEREOF, Borrower has executed this Security Instrument

Witnesses:

Barbara J. anderson

Randolph Kendall



12/16/04

_____ (Seal)
Norman Wade Dobbins        -Borrower
911 Rebel Circle
Franklin, Tenn 37064

_____ (Seal)
                          -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                -Borrower

0000010370896020301541614

STATE OF TENNESSEE,                              County ss: *Williamson*

On this ___16th___ day of ___December 2004___, before me
                  Day                    Month/Year

personally appeared ___Norman Wade Robbins,___

___a single man___

to me known to be the person(s) described in and who executed the foregoing instrument, and
who acknowledged the execution of the same to be his/her/their act and deed. Witness my hand
and official seal

My Commission Expires:

**My Commission Expires**
**Nov 26, 2005**

Notary Public
Barbara J anduson

*(Notary seal: BARBARA J. ANDERSON, NOTARY PUBLIC AT LARGE, DAVIDSON CO. TENNESSEE)*

400-1STN(4/02)                Page 15 of 15                0103708368 - 5524

                                                          12/16/2004 3:14:31 PM



## Exhibit "A"

A certain tract or parcel of land in Williamson County, Statie of Tennessee, described as follow, to-wit:
Being Lot No. 61 on the Plat of Rebel Meadows Subdivision, Seciton 2 of record in Plat Book 4, Page 39,
Registers Office for Williamson County, Tennessee.
Said Lot No. 61 fronts 100 feet on the Westerly margin of Rebel Circle, and run back 127 feet on the
North sideline, and 127 feet on the South sideline, and measures 100 feet across the rear lot line.
Being the same property conveyed to Ray J. Gannon and wife, Marilyn Gannon by deed from Rodney
Wise and wife, Shirley A. Wise and Martin Bubis, or record in Book 198, Page 767, Registers Office of
Williamson County, Tennessee. Ray J. Gannon is now deceased and said property is vested in Marilyn
Gannon Brewer as the surviving tenant by the entirety.

File Number: T-388

Legal Description with Non Homestead
Closer's Choice

### ADJUSTABLE RATE RIDER
**(LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 14th day of December , 2004 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

911 rebel cir, Franklin, TN 37064

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of 7.990 % The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of January, 2007 , and on that day every sixth month thereafter Each date on which my interest rate could change is called a "Change Date.'

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index "

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

Initials 

Loan Number: 0103708368 - 5524

C00001037083680302150301

610-1 (Rev 1/01)        Page 1 of 3        12/16/2004 3:14:31 PM

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **six** percentage points ( **6.000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.990% or less than 7.990%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( **1.000** %) from the rate of interest I have been paying for the preceding  six months. My interest rate will never be greater than 13.990)% or less than 7.990)%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

Loan Number:  0103708368 · 5524

Initials 



810-2 (Rev 1/01)                          Page 2 of 3

12/16/2004 3:14:31 PM

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

 12/16/04

_____ (Seal)
Borrower Norman Wade Dobbins

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

Loan Number: 0103708368 - 5524

610-3 (Rev 1/01)            Page 3 of 3            12/16/2004 3:14:31 PM



# ONE WEEK CANCELLATION PERIOD

Loan Number: 0103708368 - 5524          Borrower(s): Norman Wade Dobbins
Date: December 14, 2004

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

> Ameriquest Mortgage Company
> 1600 S Douglass Rd Anaheim, CA 92806
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_Norman Wade Dobbins_                        12/15/04
Borrower/Owner  Norman Wade Dobbins          Date

Borrower/Owner                               Date

Borrower/Owner                               Date

Borrower/Owner                               Date

---

## REQUEST TO CANCEL

I/We want to cancel loan #  0103708368 - 5524

_Norman Wade Dobbins_                        12/16/04
Borrower/Owner Signature                     Date



0000010370836804220101

12/15/2004 3:08:21 PM

**BORROWER COPY**

850 (10/00)

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| MIDDLE | District of | TENNESSEE |
|---|---|---|

NORMAN WADE DOBBINS

V.

AMERIQUEST MORTGAGE COMPANY, AMC
MORTGAGE SERVICES, INC., CITI RESIDENTIAL LENDING,
INC. AND WASHINGTON MUTUAL MORTGAGE
SECURITIES CORP. DOING BUSINESS AS
WASHINGTON MUTUAL BANK

## SUMMONS IN A CIVIL ACTION

CASE NUMBER:

3 - 0 7 - - 1 2 5 4

TO: (Name and address of Defendant)

AMC MORTGAGE SERVICES, INC.
C/O NATIONAL REGISTERED AGENTS, INC.
1900 CHURCH STREET, STE 400
NASHVILLE, TN 37203

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

SHEARON W. HALES
UAW-GM LEGAL SERVICES PLAN
P.O. BOX 1797
SPRING HILL, TN 37174-1797

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

KEITH THROCKMORTON

DEC 1 4 2007

_____
CLERK

(By) DEPUTY CLERK

DATE

AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant   Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL   $0.00 |

| DECLARATION OF SERVER |
|---|
| I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct |

Executed on _____          _____
                            Date                                  *Signature of Server*


                                                    _____
                                                    *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure

AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| MIDDLE | District of | TENNESSEE |

NORMAN WADE DOBBINS

**SUMMONS IN A CIVIL ACTION**

V.

AMERIQUEST MORTGAGE COMPANY, AMC
MORTGAGE SERVICES, INC., CITI RESIDENTIAL LENDING,
INC. AND WASHINGTON MUTUAL MORTGAGE
SECURITIES CORP. DOING BUSINESS AS CASE NUMBER:
WASHINGTON MUTUAL BANK

**3 - 0 7 - - 1 2 5 4**

TO: (Name and address of Defendant)

CITI RESIDENTIAL LENDING, INC.
C/O CORPORATION SERVICE COMPANY
2908 POSTON AVENUE
NASHVILLE, TN 37203

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

SHEARON W. HALES
UAW-GM LEGAL SERVICES PLAN
P.O. BOX 1797
SPRING HILL, TN 37174-1797

an answer to the complaint which is served on you with this summons, within _____20_____ days after service
of this summons on you, exclusive of the day of service  If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

KEITH THROCKMORTON

DEC 1 4 2007

CLERK

(By) DEPUTY CLERK

DATE

AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me[1] | DATE | |
| NAME OF SERVER *(PRINT)* | TITLE | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant   Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein

   Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL $0.00 |

### DECLARATION OF SERVER

   I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                  *Date*                        *Signature of Server*

                                  _____
                                    *Address of Server*

---

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____MIDDLE_____ District of _____TENNESSEE_____

NORMAN WADE DOBBINS

### SUMMONS IN A CIVIL ACTION

V.

AMERIQUEST MORTGAGE COMPANY, AMC
MORTGAGE SERVICES, INC., CITI RESIDENTIAL LENDING
INC. AND WASHINGTON MUTUAL MORTGAGE
SECURITIES CORP. DOING BUSINESS AS
WASHINGTON MUTUAL BANK

CASE NUMBER:    3 - 0 7 - 1 2 5 4

TO: (Name and address of Defendant)

WASHINGTON MUTUALMORTGAGE SECURITIES doing business as
or for WASHINGTON MUTUAL BANK
C/O CORPORATION SERVICE COMPANY
2908 POSTON AVENUE
NASHVILLE, TN 37203

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

SHEARON W. HALES
UAW-GM LEGAL SERVICES PLAN
P.O. BOX 1797
SPRING HILL, TN 37174-1797

an answer to the complaint which is served on you with this summons, within _____20_____ days after service
of this summons on you, exclusive of the day of service  If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint  Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service

KEITH THROCKMORTON

DEC 1 4 2007

CLERK

(By) DEPUTY CLERK

DATE

AO 440  (Rev.  8/01)  Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant   Place where served:

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein

   Name of person with whom the summons and complaint were left:

☐  Returned unexecuted:

☐  Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct

Executed on _____     _____
                        Date                              *Signature of Server*


                                         _____
                                              *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

MIDDLE _____ District of _____ TENNESSEE

NORMAN WADE DOBBINS

**SUMMONS IN A CIVIL ACTION**

V.

AMERIQUEST MORTGAGE COMPANY, AMC
MORTGAGE SERVICES, INC., CITI RESIDENTIAL LENDING
INC. AND WASHINGTON MUTUAL MORTGAGE
SECURITIES CORP. DOING BUSINESS AS CASE NUMBER: **3 - 0 7 - - 1 2 5 4**
WASHINGTON MUTUAL BANK

TO: (Name and address of Defendant)

WASHINGTON MUTUAL BANK
1301 SECOND AVENUE
SEATTLE, WA 98101

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

SHEARON W. HALES
UAW-GM LEGAL SERVICES PLAN
P.O. BOX 1797
SPRING HILL, TN 37174-1797

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

KEITH THROCKMORTON

_____        DEC 1 4 2007
CLERK                                 _____
                                      DATE

_____
(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | | |
|---|---|---|
| Service of the Summons and complaint was made by me[1] | DATE | |
| NAME OF SERVER *(PRINT)* | TITLE | |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant.  Place where served:

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

  Name of person with whom the summons and complaint were left:

☐  Returned unexecuted:

☐  Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL  $0.00 |
|---|---|---|

## DECLARATION OF SERVER

   I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                        Date                              *Signature of Server*


                                                 _____
                                                    *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____MIDDLE_____    District of    _____TENNESSEE_____

NORMAN WADE DOBBINS

**SUMMONS IN A CIVIL ACTION**

V.

AMERIQUEST MORTGAGE COMPANY, AMC
MORTGAGE SERVICES, INC., CITI RESIDENTIAL LENDING
INC. AND WASHINGTON MUTUAL MORTGAGE
SECURITIES CORP. DOING BUSINESS AS
WASHINGTON MUTUAL BANK

CASE NUMBER:    **3 - 0 7 - - 1 2 5 4**

TO: (Name and address of Defendant)

AMERIQUEST MORTGAGE COMPANY
C/O NATIONAL REGISTERED AGENTS, INC.,
SUITE 400, 1900 CHURCH STREET
NASHVILLE, TN 37203

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

SHEARON W. HALES
UAW-GM LEGAL SERVICES PLAN
P.O. BOX 1797
SPRING HILL, TN 37174-1797

an answer to the complaint which is served on you with this summons, within _____20_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

KEITH THROCKMORTON

DEC 1 4 2007

CLERK

DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

| *Check one box below to indicate appropriate method of service* |
|---|

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein

   Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL $0.00 |

| DECLARATION OF SERVER |
|---|

   I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct

Executed on _____         _____
                           Date                              *Signature of Server*


                                                 _____
                                                 *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure